UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARCOS GRANADOS CARMONA,<br><br>               Plaintiff/Petitioner,<br><br>v.<br><br>NATHALIE AYARY NAVA MORENO,<br><br>               Defendant/Respondent. | Civil Action No.   1:23-cv-00967 |

## VERIFIED PETITION FOR RETURN OF MINOR CHILD UNDER THE HAGUE CONVENTION

Plaintiff and Petitioner MARCOS GRANADOS CARMONA ("Mr. Carmona" or "Petitioner"), by and through his undersigned counsel, brings this action to secure the return of his 7-year-old daughter to Mexico pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"). In support thereof, Petitioner states as follows:

### INTRODUCTION

1. Mr. Carmona, a citizen of Mexico, brings this action to secure the return of his seven-year-old daughter, D.O.G.N. (the "Child"), whom Respondent Nathalie Ayary Nava Moreno ("Ms. Moreno" or "Respondent") wrongfully removed from Mexico and brought to the United States without Mr. Carmona's consent.

2. Upon information and belief, Ms. Moreno and the Child are living with Ms. Moreno's mother in Winston-Salem, North Carolina.

1

3. Mr. Carmona files this Petition pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), signed by the United States on July 1, 1988, and its implementing statute, the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001, *et seq*. A true and correct copy of this Petition as verified by Mr. Carmona is attached hereto as Exhibit A.

4. The United States and Mexico are Contracting States and signatories of the Hague Convention.

5. Article 1 of the Hague Convention provides that the objects of the Convention are: (1) to secure the immediate return of a child wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.

6. A true and correct copy of the Child Abduction Section of the Hague Convention is attached hereto as Exhibit B.

7. The text of the Hague Convention can also be found on the U.S. Department of State website at https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/for-providers/for-judges.html.

8. Congress enacted ICARA in 1988 to establish procedures for the implementation of the Hague Convention in the United States. 22 U.S.C. § 9001(b)(1). A true and correct copy of ICARA is attached hereto as Exhibit C.

9. The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of a child; it does not, however, permit the district court to consider the merits of any underlying custody dispute.

10. The Hague Convention "establishes a strong presumption favoring return of a wrongfully removed child." *Danaipour v. McLarey*, 286 F.3d 1, 13 (1st Cir. 2002) (internal citation omitted).

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this case pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

12. Venue is proper because, upon information and belief, the Child and Ms. Moreno reside in the Middle District of North Carolina at 1018 Rundell Street, Winston-Salem, North Carolina 27105.

## ADMISSIBILITY OF DOCUMENTS

13. The Exhibits attached to this Petition are admissible without authentication pursuant to 22 U.S.C. § 9005.

## HAGUE CONVENTION APPLICATION

14. Mr. Carmona has requested the return of the Child to Mexico pursuant to his application under the Hague Convention, which was filed with the Mexican Central authority and submitted to the United States Department of State as the Central Authority

3

of the United States under the Hague Convention. A true and correct copy of the Application and a translation thereof are attached hereto as Exhibit D.

## WRONGFUL REMOVAL AND RETENTION OF THE CHILD

15. On December 29, 2015, Ms. Moreno gave birth to the Child in Cuautla, Morelos, and was registered with the Civil Registry of Totolapan, Morelos, Mexico. A copy of the Child's birth certificate and a translation thereof are attached hereto as Exhibit E.

16. Mr. Carmona and Ms. Moreno are the parents of the Child.

17. Mr. Carmona and Ms. Moreno were never married.

18. Mr. Carmona is a citizen of Mexico, residing in Totolapan, Estados de Morelos, Mexico.

19. After the Child was born, Mr. Carmona and Ms. Moreno lived together with Ms. Moreno's father and the Child in Totolapan for six years.

20. In April 2021, Mr. Carmona moved out of Ms. Moreno's home and into his parents' home, approximately ten minutes by car from Ms. Moreno's home.

21. The Child continued living with Ms. Moreno after Mr. Carmona moved out; however, Mr. Carmona continued to see the Child as often as Ms. Moreno would allow it.

22. On August 25, 2021, Mr. Carmona filed a family proceeding (the "Custody Proceeding") regarding the Child against Ms. Moreno before the court of Mexico based in Yautepec, Morelos, Mexico. The Custody Proceeding was filed before the Second Civil Judge of First Instance of the Fifth Judicial District, based in the municipality of Yautepec,

Morelos, Mexico, bearing file number 433/2021, demanding Guardianship and Custody, Food and Coexistence, temporarily and later permanently, based on Ms. Moreno's inappropriate behavior. On December 2, 2021, the Mexican court entered a temporary order, effective only for the duration of the Custody Proceeding, granting custodial guardianship of the Child to Ms. Moreno and cohabitation with the Child to Mr. Carmona on the Saturday and Sunday of each week, temporarily but not permanently, as the family court in Mexico is waiting for the Child to return to Mexico to finish resolving the case. A copy of the legal summary issued by the Court of Mexico to the Secretary of Foreign Affairs and a translation thereof are attached hereto as Exhibit F.

23. Per the temporary order, Ms. Moreno and the Child were required to reside at Ms. Moren's residence on Calle Revolución Without Number, Barrio San Marcos, Municipality of Totolapan, Morelos.

24. After December of 2021, Mr. Carmona continued to spend time with the Child as frequently as Ms. Moreno allowed.

25. However, Ms. Moreno frequently threatened Mr. Carmona with taking the Child to live in the United States.

26. Mr. Carmona is depositing 3500 pesos each month with the Mexican court for the Child's expenses, in addition to buying her clothes, shoes, and food.

27. The last time that Mr. Carmona saw the Child was in September 2022.

28. The Child was attending school in Totolapan, Morelos, at this time.

29. Mr. Carmona exercised his cohabitation with the Child at that time and took her shopping to buy clothes.

30. Per the court's temporary custody order, the Child then had to be returned to Ms. Moreno's home.

31. However, when Mr. Carmona tried to see the Child, Ms. Moreno told him that the Child was sick with COVID-19 and would not be able to see him.

32. Ms. Morelos then blocked Mr. Carmona on her social media accounts and changed her telephone number so that Mr. Carmona was unable to contact her or the Child.

33. In October 2022, Mr. Carmona notified the Mexican court that he was unable to locate or speak with the Child or the Child's mother and was unable to see the Child as provided for in the court's temporary Custody Order.

34. The Mexican court then ordered a judicial inspection of Ms. Morelos's home located on Calle Revolución Without Number, Barrio San Marcos, Municipality of Totolapan, Morelos, to verify that the Child continued to live at that address.

35. During this judicial inspection, the Child was not present, nor was Ms. Moreno. Ms. Moreno's father, Lauro Nava Montesinos, stated that the Child and Ms. Moreno had not lived at that address for approximately a month and a half and that they went to live in the United States.

36. The Mexican court notified Mr. Carmona that the Child was residing in the United States on November 7, 2022.

37. Upon information and belief, the Child currently resides with Ms. Moreno and Ms. Moreno's mother in Winston Salem, North Carolina.

38. Ms. Moreno and the Child do not have legal status to reside in the United States.

39. At the time of the abduction of the Child from Mexico, Mr. Carmona had and continues to have rights of custody under Mexican law pursuant to Family Law of the State of Morelos. A translated copy of the statutory text of this Civil Code is attached as Exhibit G.

40. Mexican law derives from the Roman law and the civil law and includes the concept of *patria potestas*, which is the parents' responsibility to care for the child, reside with the child, and provide for the child's necessities, including food, education and development. The *patria potestas* gives a right to correct the child, the right to control and manage any property or rights the child may have and the right to attendance.

41. Under Mexican law, *patria potestas* is different from physical custody of the child.

42. *Patria potestas* includes the right to decide where the child lives.

43. In Mexico, a court order granting one parent physical custody of a child does not vitiate the *patria potestas* rights of the other parent.

44. The Mexican court has not entered a permanent order in the Custody Proceeding, as it cannot do so until the Child is returned to Mexico, and the temporary ordered in the Custody Proceeding did not deprive Mr. Carmona of his *patria potestas* rights.

45. The Custody Proceeding in Mexico is still open and pending.

46. No other Court has entered a permanent order regarding custody of the Child.

47. Mr. Carmona therefore has rights of custody over the Child under Mexican law.

48. At the time of the Child's removal from Mexico, Mr. Carmona was actually exercising Custody of the Child within the meaning of Articles 3 and 5 of the Hague Convention.

49. Mr. Carmona did not consent to the Child leaving Mexico or living in the United States.

50. Under the Hague Convention, the removal or retention of a child from his habitual residence is wrongful if the petitioner shows by a preponderance of the evidence that: (1) the child has been removed or retained in violation of the petitioner's "rights of custody," (i.e., "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence,") either jointly or alone; and (2) "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." Hague Convention, Arts. 3, 5.

51. Once the petitioner satisfies this burden, the children must be returned to their State of habitual residence unless the respondent proves one of the following affirmative defenses: (1) that the petition for return was filed more than one year from the removal or retention and the children are well-settled into their new environment, (2) that the petitioner "was not actually exercising the custody rights at the time of the removal or retention, or

8

had consented to or subsequently acquiesced in the removal or retention," or (3) return would put the child at "grave risk" of physical psychological harm. Hague Convention, Art. 12, 13.

52. As shown above, the Child was wrongfully removed from Mexico, her state of habitual residence, in violation of Mr. Carmona's custody rights. As Congress found when enacting ICARA, "Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention." 22 U.S.C. § 9001(a)(2). "Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." *Id*. § 9001(a)(4). Therefore, the Court must return the Child to Mexico unless Respondent establishes a valid affirmative defense.

## FEES AND COSTS

53. Under 22 U.S.C. § 9007, "[a]ny court ordering the return of a child pursuant to an action brought under section 4 [22 USCS § 9003] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate" 22 U.S.C. § 9007.

## NOTICE OF INTENT TO RAISE FOREIGN LAW

54. Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Mr. Carmona hereby provides notice of his intent to raise an issue of foreign law. Petitioner intends to present the Mexican law under which the Petitioner's rights of custody are established.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Petitioner requests the following relief:

1. Issuance of an order requiring the United States Marshals Services to serve Respondent with a file-stamped copy of this Hague Petition;

2. Issuance of an immediate order prohibiting removal of the Child from the jurisdiction of this Court during the pendency of this action;

3. Issuance of an accelerated scheduling order shortening the ordinary civil litigation time so as to reach a determination on this Petition within six weeks of filing;

4. Issuance of a final order and judgment directing: (1) the prompt return of the Child to her habitual residence in Totolapan, Mexico, pursuant to the Hague Convention; (2) payment of transportation expenses for the return of the Child to Totolapan, Mexico, by Respondent pursuant to 22 U.S.C. § 9007; and (3) payment of Petitioner's attorneys' fees and costs by Respondent; and

5. Such other and further relief as the Court deems just and proper.

Respectfully submitted this the 8th day of November, 2023.

/s/Katherine M. Kliebert
KATHERINE M. KLIEBERT
NC Bar Number 42979
Kliebert Law, PLLC
*Attorneys for Petitioner*
1300 Baxter Street, Suite 253
Charlotte, NC 28204
Phone: 704-940-5581
Fax: 704-940-5585
Email: kate@kliebertlaw.com