UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARCOS GRANADOS CARMONA,<br><br>      Plaintiff/Petitioner,<br><br>v.<br><br>NATHALIE AYARY NAVA MORENO,<br><br>      Defendant/Respondent. | 1:23CV967 |

**MEMORANDUM OPINION AND ORDER**

Presently before the Court is Petitioner Marcos Granados Carmona's Verified Petition under the Hague Convention on the Civil Aspect of International Child Abduction (the "Petition") seeking the return of his minor child, D.O.G.N. to Mexico. (ECF No. 1.)

Following a hearing held on January 29, 2024, and having considered the testimony of the witnesses, the exhibits presented, and arguments of counsel, the Court granted Petitioner's request and ordered the return of D.O.G.N. to Mexico. The Court now memorializes its findings and conclusions.

 I. **Procedural Background**

  1. Petitioner Marcos Granados Carmona Petitioner initiated this action on November 28, 2023, by filing a Verified Petition under the Hague Convention on the Civil Aspect of International Child Abduction (the "Hague Convention"), and the International Child Abduction Remedies Act ("ICARA"), seeking the return of his minor child, D.O.G.N. (the "Child"), to Mexico. (ECF No. 1.)

  2. Petitioner also filed a Motion for a Temporary Restraining Order and

1

Preliminary Injunction, (ECF No. 3), requesting entry of an order to prohibit Respondent Nathalie Ayary Nava Moreno from removing the Child from this District pending the disposition of the Petition.

3. The Court held a hearing on Petitioner's Motion for a Preliminary Injunction on December 18, 2023. (ECF No. 20.) Petitioner was present via videoconference and represented by counsel. Respondent appeared *pro se*. (*Id.*) Following that hearing, the Court entered an order granting Petitioner's Motion for a Preliminary Injunction. (ECF No. 22.)

4. On January 29, 2024, the Court held a final evidentiary hearing on the Petition. (ECF No.26.) Petitioner was present via videoconference and represented by counsel. Respondent appeared *pro se*. (*Id.*) Both parties presented evidence and made arguments to the Court.

**I.     Findings of Fact**

1. Following the final hearing on January 29, 2024, the Court made findings of fact orally in open court. Those facts are incorporated herein by reference. The Court finds additional facts from the verified pleadings, as well as from the evidence presented at the hearing.

2. Petitioner and Respondent are the parents of the Child. Petitioner, Respondent, and the Child are citizens of Mexico.

3. On December 29, 2015, the Child was born in Cuautla, Morelos, and was registered with the Civil Registry of Totolapan, Morelos, Mexico. (ECF No. 1-5.)

4. Petitioner and Respondent were never married but lived together with the Child in Totolapan, Morelos, Mexico, from the Child's birth until April 2021. (ECF No. 1, ¶¶ 16-20.)

5. After Petitioner and Respondent separated in 2021, Petitioner moved into his parents' home, which was close to the home he lived in with Respondent and the Child. (*Id.*, ¶ 20.)

6. The Child continued living with Respondent, but Petitioner continued to see the Child. (*Id.*, ¶ 21.)

7. In August 2021, Petitioner filed a court action in Yautepec, Morelos, Mexico, seeking custody of the Child (the "Custody Proceeding"). (*Id.*, ¶ 22.)

8. Respondent testified that she was aware of the Custody Proceeding and appeared in court in those proceedings.

9. In December 2021, the Mexican court entered a temporary order (the "Custody Order"), effective only for the duration of the Custody Proceeding, granting custodial guardianship of the Child to Ms. Moreno and cohabitation with the Child to Mr. Carmona on the Saturday and Sunday of each week. (ECF No. 1-6.)

10. Respondent testified that she was aware of the Custody Order.

11. The Custody Order required the Child to reside at Respondent's residence at Calle Revolución Without Number, Barrio San Marcos, Municipality of Totolapan, Morelos. (*Id.*)

12. The Custody Order further required Petitioner to deposit money with the Court each month for the Child's expenses, which Petitioner has done. (*Id.*; ECF No. 1, ¶ 26.)

13. The last time Petitioner saw the Child was in September 2022, when he took her shopping to buy clothes. (*Id.*, ¶¶ 27-29.)

14. At that time the Child in the second grade and was attending school in Totolapan, Morelos. (*Id.*)

3

15. The next time that Petitioner attempted to see the Child, he was unable to get in touch with Respondent, as she blocked his phone number and would not take his calls.

16. Respondent also blocked Petitioner from contacting her through her social media accounts. (*Id.*, ¶¶ 31-32.)

17. Petitioner heard from one of Respondent's family members that Respondent had taken the Child to live with Respondent's cousin in a different location in Mexico; however, when Petitioner visited that location the Child and Respondent were not there.

18. Petitioner then notified the court in Mexico that he was unable to locate the Child or speak with the Child. (*Id.*, ¶ 33.)

19. When the Mexican court investigated, it learned from Respondent's father that Respondent had taken the Child to live in the United States. (*Id.*, ¶ 35; ECF No. 1-6.)

20. Petitioner did not consent to Respondent taking the Child to the live in the United States and testified that he filed a police report in Mexico regarding the same. (ECF No. 1, ¶ 49.)

21. The Child does not have a passport.

22. Respondent testified that she and the Child do not have legal status to reside in the United States and are living here illegally.

23. Carlos Aviles Pineda, who is Petitioner's attorney in the Custody Proceedings, testified that the Custody Proceeding in Mexico remains pending, as the Mexican court cannot proceed until the Child is returned to Mexico.

24. Respondent and the Child currently live with Respondent's mother and brothers in Winston Salem, North Carolina.

25. Although Respondent's mother testified that Petitioner inappropriately touched

4

the Child and was abusive to Respondent, the Court does not find these allegations to be credible.

26. Respondent's mother testified that she has lived in the United States for twenty-one years and only met Petitioner on one occasion, approximately eleven years ago.

27. Respondent's mother was not present at the Child's birth and had not met the Child in person prior to the Child's removal from Mexico.

28. Further, Respondent did not raise allegations of abuse in the Custody Proceeding in Mexico, nor did she raise them at the hearing on Petitioner's Motion for a Preliminary Injunction. Respondent did not present any evidence to corroborate these allegations.

29. The Child has had no contact or communication with Petitioner or with her paternal grandparents since being removed from Mexico.

30. Respondent is employed at Outwest Steakhouse in Kernersville, North Carolina.

31. The Child is enrolled in school in Winston Salem.

32. Based on the Child's testimony and the school records present by Respondent, the Court finds that the Child primarily speaks Spanish and is not fluent in English. The language barrier has prevented the Child from performing as well as she could perform in school.

**II.     Conclusions of Law**

33. The Court has jurisdiction over this case under 22 U.S.C. § 9003(a) and 28 U.S.C. § 1331. Venue is proper under 22 U.S.C. § 9003(b) and 28 U.S.C. § 1391.

   A.     Petitioner's *Prima Facie* Case

5

34. Having heard the evidence of the parties and their arguments, the Court concludes that Petitioner has made a *prima facie* showing that he is entitled to have the Child returned to Mexico pursuant to the Hague Convention.

35. In order to prevail on his petition, Petitioner must prove by a preponderance of the evidence that: "(1) the child was 'habitually resident' in the petitioner's country of residence at the time of removal, (2) the removal was in breach of the petitioner's custody rights under the law of his home state, and (3) the petitioner had been exercising those rights at the time of removal." *Palomo v. Howard*, 426 F. Supp. 3d 160, 167 (M.D.N.C. 2019) (quoting *Bader v. Kramer*, 484 F.3d 666, 668 (4th Cir. 2007)); *see also* Hague Convention, Arts. 3, 5.

36. Respondent did not dispute that Mexico was the habitual resident of the Child prior to her removal from Mexico. The Court therefore finds that Mexico was the habitual resident of the Child, as the Child resided in Mexico from her birth until the wrongful removal.

37. Further, Petitioner, as the Child's father, has custody rights under Articles 226 and 227 of the Family Code of the Free and Sovereign State of Morelos. (ECF No. 1-7 at 4.)

38. Petitioner also has custody rights under the Mexican law concept of *patria potestas*, which is the parents' responsibility to care for the child, reside with the child, decide where the child lives, and provide for the child's necessities, including food, education and development. *See Garcia v. Pinelo,* 808 F.3d 1158, 1164 (7th Cir. 2015); *Whallon v. Lynn,* 230 F.3d 450, 456-57 (1st Cir. 2000).

39. In Hague Convention cases, courts find that a parent is exercising his rights "whenever a parent with de jure custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." *Bader*, 484 F.3d at 671 (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1065 (6th Cir. 1996)). The Court therefore finds that Petitioner was exercising his

6

custody rights at the time of the wrongful removal of the Child from Mexico, as he spent time with the Child, provided for the Child, and filed for custody of the Child.

40. Accordingly, based on the record in this case, the Court finds that Petitioner has shown by a preponderance of the evidence that the Child was wrongfully removed from Mexico, her state of habitual residence, in violation of Petitioner's custody rights.

B. <u>Respondent's Affirmative Defenses</u>.

41. Respondent did not file an answer in this matter or plead any affirmative defenses. At the hearing, Respondent raised two potential defenses: (1) that the Child was well settled in the United States and (2) returning the Child to Mexico would put the Child at risk. The Court finds that the evidence Responded presented at the hearing was not sufficient to meet her burden of proving any affirmative defense.

42. "Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001(a)(4). Therefore, the Court must return the Child to Mexico unless Respondent establishes one of four affirmative defenses. *Palomo*, 426 F. Supp. 3d at 167 (quoting *Bader*, 484 F.3d at 668-69).

43. The following affirmative defenses are available under the Hague Convention: (1) that the petition for return was filed more than one year from the removal or retention and the child is well-settled into their new environment, (2) that the petitioner "was not actually exercising his custodial rights at the time of the removal or retention, or had consented to or acquiesced in the removal," (3) return would put the child at "grave risk" of physical or psychological harm; or (4) return would not be permitted by "fundamental principles of the United States relating to the protection of human rights and fundamental freedoms." *Id.*; *see*

7

*also* Hague Convention, Art. 12, 13.

44. Petitioner bears the burden of establishing the following affirmative defenses by a preponderance of the evidence: (1) that petitioner consented to the child's removal or was not actually exercising his custody rights and (2) that the child is well settled. 22 U.S.C. § 9003(e); *Palomo*, 426 F. Supp. 3d at 167 (quoting *Bader*, 484 F.3d at 668-69). A petitioner must establish the remaining two affirmative defenses by clear and convincing evidence. *Id.*

> i. *Petitioner Was Exercising His Custody Rights and Did Not Consent to the Removal*

45. Respondent did not establish that Petitioner was not exercising his custody rights at the time Respondent removed the Child from Mexico or that Petitioner consented to the Child's removal from Mexico. There are no facts on the record to support such a finding. Petitioner, on the other hand, testified that he did not consent to the Child's removal from Mexico and presented evidence, as set forth in the findings of fact, that he was exercising his custody rights prior the removal of the Child from Mexico by filing for custody of the child, spending time with the Child, and providing support for the Child. The Court therefore finds that Respondent did not establish this affirmative defense.

> ii. *The Child Is Not Well Settled*

46. The Court further finds that Respondent failed to show that the Child is well-settled in her new environment. "[F]or a child to be settled within the meaning of the Convention, the child must have significant connections demonstrating a secure, stable, and permanent life in his or her new environment." *Alcala v. Hernandez*, 826 F.3d 161, 170 (4th Cir. 2016). In making this determination, courts consider several factors, including:

> the age of the child; (2) the stability of the child's residence in the new environment; (3) whether the child attends school or day care consistently; (4) whether the child attends church [or participates in other community or extracurricular school

8

activities] regularly; (5) the respondent's employment and financial stability; (6) whether the child has friends and relatives in the new area; and (7) the immigration status of the child and the respondent. 697 F.3d at 57.

*Id.* at 171 (*quoting Lozano v. Alvarez*, 697 F.3d 41, 57 (2d Cir. 2012), aff'd in part sub nom. *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 188 L. Ed. 2d 200 (2014)).

47. While Respondent did present evidence showing that the Child is attending school in North Carolina and lives with Respondent and other family members, Respondent did not present evidence showing that the Child is engaged in her community or has friends in the area.

48. Respondent, Respondent's mother, and the Child all testified through an interpreter, showing that the Child lives in a Spanish-speaking household and that the Child is not fluent in English. Documents from the Child's school further suggest that the language barrier is impeding the Child's progress in school. This factor weighs against a finding that the Child is well settled. *See Bobadilla v. Cordero*, No. 1:14-CV-205, 2014 U.S. Dist. LEXIS 108938, at *9 (M.D.N.C. Aug. 6, 2014).

49. Furthermore, Respondent has not allowed the Child to have contact with her father or her paternal grandparents, with whom the Child maintained a relationship in Mexico, since coming to the United States. This finding also shows that the Child is not well settled. *Id.* at *10 (finding that this type of "interference with family relationships is inherently disruptive….").

50. Finally, both the Child and Respondent are living in the United States illegally, which inherently makes the Child's living situation unsettled. *Id.* at *10-11 (finding the child's living situation to be tenuous when his primary caretaker could be arrested and deported at any time).

9

51. Weighing all of these factors, the Court finds that Respondent failed to show that the Child is well settled in her new environment.

### iii. There Is No Grave Risk of Harm to the Child

52. Finally, the Court finds that Respondent did not show by clear and convincing evidence that return to Mexico would put the child at "grave risk" of physical or psychological harm.

53. The "grave risk" exception is narrow and may not be used as a substitute for litigating the child's best interests. *Hirst v. Tiberghien*, 947 F. Supp. 2d 578, 595 (D.S.C. 2013). "Only evidence directly establishing the existence of a grave risk that would expose the child to physical or emotional harm or otherwise place the child in an intolerable situation is material to the court's determination." Pub. Not. 957, 51 Fed. Reg. at 10510. A respondent asserting a "grave risk" defense "must cite specific evidence of potential harm to the child upon [her] return." *Salguero v. Argueta*, 256 F. Supp. 3d 630, 637 (E.D.N.C. 2017) (quoting *Baxter v. Baxter*, 423 F.3d 363, 374 (3d Cir. 2005)).

54. The only evidence that Respondent presented in support of a "grave risk" defense was the conclusory testimony of Respondent and of her mother. Respondent made general allegations that Petitioner was verbally abusive to her, and Respondent's mother testified that the Child told her Petitioner had inappropriately touched her. Respondent did not present any additional evidence to support these allegations, nor did Respondent present any evidence showing that Petitioner has harmed the Child in any other way.

55. The Court finds the testimony of Respondent and of her mother unreliable. Respondent admitted that she did not raise allegations of abuse towards herself or towards the Child in the Custody Proceeding in Mexico. She also did not raise these allegations at the

hearing on Petitioner's Motion for Preliminary Injunction. Further, Respondent's mother testified that she has only met Petitioner once, approximately eleven (11) years ago.

56. Even taking the testimony of Respondent and her mother into account, Respondent falls short of showing that return of the Child to Mexico would present a "grave risk" of harm to the Child by clear and convincing evidence. Respondent's concerns are more appropriately addressed during custody proceedings, and Mexico is the proper jurisdiction for such proceedings.

**IT IS THEREFORE ORDERED** as follows:

1. Petitioner's Verified Petition under the Hague Convention on the Civil Aspect of International Child Abduction is **GRANTED**;

2. Respondent shall return the Child to Totolapan, Mexico, at Respondent's sole expense, no later than March 1, 2024;

3. The Mexican Consulate in Raleigh shall assist Respondent in arranging the Child's return to Mexico;

4. Respondent is to provide all documents and information required to obtain passports for herself and the Child to the Mexican Consulate in Raleigh within five (5) days of this Order, and to otherwise cooperate with the Mexican Consulate as necessary for the Child to travel to Mexico;

5. The Mexican Consulate in Raleigh shall, within five (5) days of receiving all necessary documentation from Petitioner and Respondent, issue passports to Respondent and to the Child;

6. The Mexican Consulate shall not give possession of the Child's passport to Respondent but shall retain possession of the Child's passport until it is delivered to Petitioner

in Mexico;

7. A representative from the Mexican Consulate shall travel with the Child to Mexico;

8. Respondent shall book all travel for the Child's return to Mexico in coordination with the Mexican Consulate to ensure that a representative from the Mexican Consulate can make arrangements to travel on the same flights and accompany the Child and Respondent on the Child's return trip;

9. As soon as travel arrangements for the Child's return are made, Respondent or the Mexican Consulate shall inform Petitioner's counsel of the Child's travel plans, including the specific dates of arrival and departure and all flight information for the Child's return flight to Mexico;

10. Until the Child is returned to Mexico, Respondent, or anyone acting on her behalf or at her direction, shall not remove the Child from the Middle District of North Carolina for any purpose without permission of the Court;

11. Respondent shall keep Petitioner's counsel informed of a current address and telephone number for Respondent and the Child;

12. Respondent shall make the Child available to the Court as necessary until the Child is returned to Mexico;

13. Respondent, or anyone acting on her behalf or at her direction, shall not take any action that would frustrate the purpose or goal of this order, including but not limited to concealing the Child, changing the Child's residence, or otherwise interfering with the Child's return to Mexico; and

14. Respondent shall reimburse Petitioner for the costs he incurred to have an

12

Case 1:23-cv-00967-LCB-LPA   Document 27   Filed 02/13/24   Page 12 of 13

interpreter present at the hearing on his Motion for a Preliminary Injunction and at the final hearing on his Verified Petition under the Hague Convention on the Civil Aspect of International Child Abduction.

**Respondent is cautioned that violation of this order can be treated as criminal contempt and is punishable as a federal criminal offense by the United States Attorney and could further result in the issuance of a warrant pursuant to N.C. GEN. STAT. § 50A requiring taking custody of the child by the United States Marshal.**

**SO, ORDERED**

This, the 13th day of February 2024.

/s/ Loretta C. Biggs
United States District Judge